NETTIE PATE AND MATTIE GARRETT, APPELLANTS, v. CARSTEN MEAD AND ELSIE MEAD BROWN, RESPONDENTS.

No. 4589

May 8, 1963

381 P.2d 230

*Hawkins, Cannon & Hawkins,* of Las Vegas, for Appellants.

*Edward G. Marshall* and *George L. Albright,* of Las Vegas, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

Over the objection of appellants, Nettie Pate and Mattie Garrett, the district court ordered distribution of the estate of George Wilbur Mead to the respondents Carsten Mead and Elsie Mead Brown. George Wilbur Mead died intestate at Las Vegas. He was predeceased by his wife, Lillie Mead, who also died intestate. The appellants Nettie Pate and Mattie Garrett are the sisters of Lillie Mead and claim the estate of George Wilbur Mead under NRS 134.210. That statute provides that if a wife (Lillie Mead) dies intestate, leaving heirs, and the husband (George Wilbur Mead) subsequently dies intestate, without heirs, his estate shall vest in the heirs of the wife. After a full hearing the district court found that the respondents Carsten Mead and Elsie Mead Brown were, respectively, the half brother and half sister of the decedent, and ordered distribution to them in equal shares;[1] that George Wilbur Mead died intestate, *with heirs,* and that the appellants' claim to his estate, based upon NRS 134.210 (that George Wilbur Mead had died intestate, *without heirs*), is unfounded. The sole question presented is whether the proof offered supports the finding of relationship between the decedent and the distributees.

---

[1] NRS 134.060 provides that, if one dies intestate, leaving no issue, wife, father or mother surviving, his estate descends, in equal shares, to his brothers and sisters. NRS 134.160 provides that kindred of the half blood shall inherit equally with those of the whole blood in the same degree.

The district court's finding is amply supported. A need does not exist for a complete recital of the proof. It is sufficient to relate that a court could reasonably find from the evidence that (a) the decedent, George W. Mead, was the son of Charles Wilbur Mead and his first wife, Elizabeth Joy Mead; (b) the respondents Carsten Mead and Elsie Mead Brown are the son and daughter of Charles Wilbur Mead and his second wife, Mary Stuhr Mead; (c) the only living kindred of the decedent, George W. Mead, are his brother and sister of the half blood, namely Carsten Mead and Elsie Mead Brown.[2] As the record discloses a substantial evidentiary basis for the lower court's determination of heirship, our function as an appellate court is exhausted.[3]

Affirmed.

BADT, C. J., and MCNAMEE, J., concur.

[2]Probative documentary records (birth, marriage and death certificates) reasonably show that Charles Wilbur Mead was born in Pittsburgh, Pa. in 1863; when 18 years old (1881) he married Elizabeth Joy. Two children, Maud, born May 27, 1883 and the decedent, George Wilbur Mead, born March 2, 1885 were issue of this marriage. On April 23, 1886, Elizabeth Joy Mead died. On December 20, 1887, Charles Wilbur Mead married Mary Stuhr. Four children were the issue of this second marriage, two of whom are the respondents, Carsten Mead and Elsie Mead Brown. All children of Charles Wilbur Mead's two marriages are dead, except the respondents. The marriage certificate of Charles Wilbur Mead and his first wife was found by Carsten Mead in the trunk of his mother who was Charles Wilbur Mead's second wife. The bank records of the decedent George Wilbur Mead and the birthday book of respondents, together with the latters' oral testimony, reasonably establish that the Charles Wilbur Mead, who was the father of the decedent, is the same Charles Wilbur Mead who was their father.

[3]Appellants also urge that error occurred when the lower court denied their motion for a new trial based upon newly discovered evidence. We find no merit in their contention. The "newly discovered evidence" is a letter which appellants' counsel proposed to use to impeach the testimony given by a witness for the respondents. The testimony sought to be thus impeached was excluded by the lower court in making its decision. Furthermore, it is doubtful whether the letter does impeach, and if it does, whether it strikes a material point in the case. Cf. Whise v. Whise, 36 Nev. 16, 131 P. 967, 44 L.R.A.,N.S., 689; Bramlette v. Titus, 70 Nev. 305, 267 P.2d 620.